USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/25/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

**GILLIAN ANN C. K.,**

**Plaintiff,**

**-against-**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

----------------------------------------------------------------X

**25-CV-6459 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Gillian Ann C. K.[1] ("Plaintiff") seeks judicial review of the determination of the Commissioner of Social Security that she is not entitled to monthly disability insurance benefits ("DIB") under the Social Security Act (the "Act") from her December 31, 2008 alleged onset date through March 31, 2013, her date last insured. See ECF No. 12. Plaintiff's motion is DENIED. The Commissioner's cross-motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## BACKGROUND

### I. Administrative Proceedings

On March 15, 2016, Plaintiff protectively filed an application for DIB, alleging disability beginning on December 31, 2008. See ECF No. 11, Administrative Record ("R."), at 14. Her application was denied on April 28, 2016, and she requested a hearing before an Administrative Law Judge ("ALJ"). Id. Plaintiff appeared for a hearing before ALJ Laura Michaelc-Olszewski

[1] The Court identifies Plaintiff by first name and last initial in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United State. See Joelyn M. v. Comm'r of Soc. Sec., No. 24-cv-8756 (GRJ), 2025 WL 3059761, at *1 n.1 (S.D.N.Y. Nov. 2, 2025).

on September 20, 2018. R. 39. The ALJ denied Plaintiff's claim on October 3, 2018. R. 11-30. After the Appeals Council denied review, Plaintiff sought judicial review in this Court.

On September 1, 2020, the Court remanded the case for further administrative proceedings. R. 1054-56. On remand, the Appeals Council directed the ALJ to reconsider the medical opinion evidence, reevaluate Plaintiff's residual functional capacity ("RFC"), and, if warranted, obtain additional evidence from a vocational expert. R. 1066-67. ALJ Olszewski conducted a second hearing by telephone on March 15, 2021, and again denied Plaintiff's claim on March 30, 2021. R. 1032-53, 1063-82.

Plaintiff subsequently filed exceptions to the 2021 decision. R. 1170-73. On June 28, 2023, the Appeals Council vacated the decision and remanded the case for another hearing before a different ALJ. 1097-1098. The Appeals Council found that the 2021 decision identified moderate limitations in Plaintiff's ability to understand, remember, or apply information and to concentrate, persist, or maintain pace, but did not incorporate corresponding mental limitations into the RFC or adequately explained their omission. R. 1097-98. The Appeals Council therefore directed the new ALJ to reevaluate Plaintiff's mental impairments, reconsider her RFC, and obtain supplemental vocational evidence if warranted. R. 1098. It also directed the agency to determine whether Plaintiff's separate May 2023 application for Supplemental Security Income should be consolidated with the DIB claim. Id.

On March 12, 2024, Plaintiff appeared by telephone for a hearing before ALJ Kieran McCormack. R. 994-1025. An impartial vocational expert also testified. R. 1020-24. The ALJ denied Plaintiff's DIB claim on March 21, 2024. R. 970-86. Plaintiff filed exceptions, which the Appeals Council denied on June 10, 2025, making the March 2024 decision final. R. 963-69, 1268-72.

## II. Plaintiff's Federal Case

Plaintiff timely filed this action seeking review of the Commissioner's final decision. ECF No. 1. She asks the Court to reverse the Commissioner's decision or remand the case for further administrative proceedings. ECF No. 12.

Plaintiff principally argues that the ALJ failed to consider whether her numerous physical and mental impairments, either individually or in combination, met or equaled a listed impairment. Id. at 14-17. She further contends that the RFC is not supported by substantial evidence because no medical opinion addressed her functional limitations during the relevant period and because the ALJ did not sufficiently account for her fibromyalgia, chronic pain, migraines, carpal tunnel syndrome, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). Id. at 10-13. Plaintiff also challenges the vocational expert's testimony, including the reliability and continued existence of the jobs identified at step five. Id. at 18-19. Finally, Plaintiff argues that the timing and circumstances of the three ALJ decisions, together with the Appeals Council's remand instructions, demonstrate that her claim did not receive a sufficiently thorough or impartial review. Id. at 5-8, 15-16.

## III. Factual Background

Plaintiff was born on February 1, 1981. R. 232. She was 27 years old on the alleged onset date and 32 years old when her insured status expired on March 31, 2013. Before alleging disability, Plaintiff worked as an emergency medical technician and a cashier-checker. R. 235, 984.

Plaintiff received treatment for back pain and bipolar disorder before and during the relevant period, December 31, 2008, to March 31, 2013. R. 351-418, 1374-1442. In March 2008, while pregnant, Plaintiff reported that her lower-back pain had improved and denied numbness,

weakness, or pain radiating into her legs. R. 1414. Her physician described her overall condition as stable. R. 1415. In May 2009, Plaintiff reported continuing back pain and headaches. R. 1424. An examination showed lumbar tenderness but no motor weakness, normal extremities, and an intact gait and balance. R. 1426. A July 2009 electromyography study showed mild right L5 radiculopathy. R. 422. Other examinations documented decreased range of motion, an antalgic gait, muscle spasms, trigger points, tenderness, and decreased sensation, although examinations also frequently showed normal strength and no joint deformity or edema. R. 424-25, 697.

Plaintiff treated her pain with medication, physical therapy, and injections. R. 430, 441, 525, 692, 704. Treatment notes indicated that medication reduced her pain and helped her function without significant side effects. R. 692. Plaintiff also received treatment for migraines. R. 594. During 2010, she reported good results from injections and stated that she rarely needed Imitrex more than once or twice per month. Id. A 2013 nerve-conduction study showed mild prolongation of the left ulnar sensory nerve conduction to the fourth finger. R. 422.

Plaintiff also received mental health treatment for bipolar disorder and ADHD. Shortly after the birth of her daughter, she reported mood swings, irritability, and difficulty focusing while she was not taking medication. R. 384, 1417–18. The following month, Plaintiff reported that her symptoms had resolved with medication. R. 1420. Treatment records from the following years generally described her as doing well, although she periodically reported irritability, family stress, racing thoughts, and insomnia. R. 358–61. In early 2012, Plaintiff resumed medication after experiencing increased stress and thereafter reported improvement. R. 366. In June 2012, she reported that she was looking for work closer to home and reading "non-stop." R. 358.

At the March 2024 hearing, the ALJ questioned Plaintiff about her symptoms during the relevant timeframe. Plaintiff testified that she experienced constant back and body pain, that her

fibromyalgia symptoms came in waves, and that bending, squatting, standing, and prolonged sitting worsened her pain. R. 1006–10. She also testified that she had frequent migraines, difficulty concentrating because of ADHD, and panic attacks. Id. Plaintiff stated that she could not sit or stand for more than approximately 30 minutes at a time and experienced difficulty using one of her hands. R. 1014–16. She also testified that, during the relevant period, she helped with cooking and cleaning and cared for her infant daughter as much as she could. R. 1013-14. When asked if she "had to go to work 40 hours a week," she stated that she did not think she could because she "can't sit or stand very long at all *anymore*." R. 1016 (emphasis supplied).

**IV. The ALJ's Decision**

On March 21, 2024, the ALJ denied Plaintiff's application for DIB. R. 970-86. The ALJ first found that Plaintiff met the insured-status requirements of the Social Security Act through March 31, 2013. R. 975. At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 31, 2008, through her date last insured. R. 975-76.

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease, bursitis, fibromyalgia, luxating patella, osteoarthritis, asthma, migraines, bipolar disorder, and ADHD. R. 976. The ALJ found that Plaintiff's carpal tunnel syndrome was nonsevere because the 2013 nerve-conduction study showed only mild findings and the contemporaneous medical record did not document significant complications or functional limitations resulting from that condition. Id.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 976-80. The ALJ specifically considered Listings 1.15 and 1.18 for musculoskeletal impairments, Listing

3.03 for asthma, and Listings 12.02, 12.04, and 12.11 for Plaintiff's mental impairments. Id. The ALJ also considered Plaintiff's obesity, fibromyalgia, and migraines when evaluating medical equivalence. R. 977-78. Applying the psychiatric-review technique, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. R. 978-980.

The ALJ then found that Plaintiff retained the RFC to perform a limited range of sedentary work. R. 980. Specifically, the ALJ found that Plaintiff could lift or carry ten pounds occasionally; sit for six hours, stand for three hours, and walk for three hours during an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Id. The ALJ also found that Plaintiff could change positions every 30 minutes while remaining on task; should avoid unprotected heights and vibration; could work in no more than a moderate-noise environment; and could tolerate only occasional exposure to extreme temperatures, respiratory irritants, and humidity. Id. To account for Plaintiff's mental impairments, the ALJ limited her to simple, routine, low-stress work involving no more than occasional judgment, decision-making, or changes in the work setting. Id.

In reaching this RFC, the ALJ reviewed Plaintiff's testimony, the contemporaneous treatment records, her reported response to treatment, and her daily activities. R. 981-84. The ALJ acknowledged that examinations sometimes documented decreased range of motion, an antalgic gait, muscle spasms, trigger points, tenderness, and decreased sensation. R. 982. He also considered examinations showing normal strength, an intact gait, no motor weakness, and generally stable mental-status findings, as well as records stating that medication and injections improved Plaintiff's physical and mental symptoms. R. 981-83.

The record contained no medical opinion specifically assessing Plaintiff's work-related limitations during the insured period. The ALJ gave little weight to the March 2018 opinion of consultative examiner Dr. Rita Figueroa, who assessed restrictions including lifting no more than ten pounds and sitting, standing, or walking for only three hours each workday. R. 983-84. The ALJ observed that Dr. Figueroa examined Plaintiff five years after her insured status expired and did not purport to assess Plaintiff's functioning before March 31, 2013. Id. The ALJ similarly gave minimal weight to Dr. Jonathan Nasser's 2019 statement that Plaintiff was unable to perform physical work because the statement also postdated the insured period, did not assess Plaintiff's earlier functioning, and concerned an issue reserved to the Commissioner. R. 984.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a cashier-checker or emergency medical technician. R. 984. At step five, however, the ALJ concluded that other jobs existed in significant numbers in the national economy that Plaintiff could have performed. R. 984-86. Relying on the vocational expert's testimony, the ALJ identified the representative occupations of final assembler, with approximately 29,000 jobs nationally; touch-up screener, with approximately 10,000 jobs nationally; and addressing clerk, with approximately 23,000 jobs nationally. R. 985. The vocational expert explained that her testimony concerning the position-change option was based on her professional knowledge and experience because the Dictionary of Occupational Titles does not address that accommodation. R. 985-86. Accordingly, the ALJ concluded that the Plaintiff was not disabled from December 31, 2008, through March 31, 2013. R. 986.

## DISCUSSION

### I. Standard of Review

In reviewing the Commissioner's decision, the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings are "conclusive" unless they are not supported by substantial evidence on the record. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The standard of review is therefore "very deferential . . . even more so than the clearly erroneous standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant [is] disabled . . . or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted); see also Brault, 683 F.3d at 448 ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original) (citations and internal quotation marks omitted). Remand, however, is appropriate where the ALJ fails to provide adequate

reasoning to support his decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[W]e do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

## II. Definition of Disability

A person is considered "disabled" under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. at § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order and if it is determined that the claimant is or is not disabled at a step of the evaluation process, then the evaluation will not progress to the next step. Id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app.

> 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof at steps one through four. See Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). At step five, the burden shifts, "to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." Schillo v. Kijakazi, 31 F.4th 64, 70 (2d Cir. 2022) (citing 20 C.F.R. § 404.1560(c)(2)). The Commissioner, however, does not need to provide additional evidence of the claimant's RFC. Id.

## III. Analysis

To prevail, Plaintiff must establish that the ALJ committed legal error or that a reasonable factfinder would have been required to find her disabled. Because Plaintiff has not met this high standard, the ALJ's decision must be affirmed.

### A. The ALJ Properly Considered Plaintiff's Impairments at Steps Two and Three

Plaintiff first argues that the ALJ failed to consider the combined effects of her physical and mental impairments and improperly analyzed only those impairments that corresponded to specific Listings. See ECF No. 12 at 14-17. The decision does not support that characterization.

At step two, the ALJ found that Plaintiff had ten severe impairments: obesity, degenerative disc disease, bursitis, fibromyalgia, luxating patella, osteoarthritis, asthma, migraines, bipolar disorder, and ADHD. R. 976. He separately considered Plaintiff's carpal tunnel syndrome and found it nonsevere because a 2013 nerve-conduction study showed only

mild prolongation of the left ulnar sensory nerve and the contemporaneous medical records did not identify significant complications or functional limitations. Id. The ALJ nevertheless stated that he considered all of Plaintiff's medically determinable impairments, including those found nonsevere, when determining her RFC. Id.

A finding that an impairment is "severe" at step two does not establish that it is disabling or that it satisfies a Listing. Step two imposes only a threshold requirement intended to screen out claims involving no more than minimal functional limitations. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). At step three, by contrast, a claimant must show that an impairment satisfies all the criteria of a particular Listing or is at least equal in severity and duration to those criteria. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §§ 404.1525(c)(3), 404.1526. Plaintiff identifies no Listing whose criteria she satisfied during the insured period.

The ALJ expressly considered Listings 1.15 and 1.18 for Plaintiff's musculoskeletal impairments, Listing 3.03 for asthma, and Listings 12.02, 12.04, and 12.11 for her mental impairments. R. 976-80. He found, among other things, that the record did not establish the required degree of neurological compromise, inability to ambulate or use the upper extremities, or asthma-related hospitalizations. R. 976-78. For the mental Listings, the ALJ found moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, but only mild limitations in interacting with others and in adapting or managing herself. R. 978-980. Because Plaintiff did not have one extreme or two marked limitations, the ALJ concluded that paragraph B criteria were not satisfied. R. 980. He also found no evidence satisfying the paragraph C criteria. Id.

The absence of a separate Listing for fibromyalgia, obesity, or migraines does not make the analysis incomplete. An impairment that has no independent Listing may medically equal a listed impairment, either alone or in combination with another impairment. 20 C.F.R. § 404.1526(b)(3). The ALJ recognized that principle and separately considered whether Plaintiff's fibromyalgia, obesity, and migraines equaled a Listing, alone or in combination with her other conditions. R. 978-79. He concluded that they did not. Id. Plaintiff does not identify any omitted Listing or explain how the evidence satisfied criteria equal in severity to a Listing.

The remainder of the decision likewise demonstrates that the ALJ considered Plaintiff's impairments together. His RFC analysis discussed her back, hip, and knee pain; fibromyalgia; obesity; migraines; asthma; bipolar disorder; ADHD; and associated symptoms. R. 981-84. The decision, read as a whole, reflects that the ALJ evaluated the combined functional effects of Plaintiff's impairments.

**B. Substantial Evidence Supports the RFC Determination**

Plaintiff raises several overlapping challenges to the RFC determination. She argues that the ALJ failed to adequately consider her pain and the combined effects of her physical impairments, minimized the limitations caused by her migraines, bipolar disorder, and ADHD, and improperly discounted Dr. Figueroa's opinion in favor of his own assessment of the medical evidence. See ECF No. 12 at 14–17. The Court addresses Plaintiff's physical limitations, the medical opinion evidence, and her mental limitations in turn.

**1. Plaintiff's Physical Impairments and Symptoms**

The ALJ did not, as Plaintiff contends, ignore her complaints of pain. He summarized Plaintiff's testimony that she experienced constant back and body pain, that movement aggravated her symptoms, and that she could not sit or stand for more than approximately 30

minutes. R. 981. He also acknowledged abnormal examination findings, including decreased range of motion, an antalgic gait, muscle spasms, trigger points, tenderness, and decreased sensation. R. 982. The ALJ credited these limitations in part by restricting Plaintiff to sedentary work, limiting her lifting and postural activities, and permitting her to change positions every 30 minutes. R. 980.

The ALJ also considered evidence that Plaintiff was not as limited during the insured period as she alleged in 2024. In May 2009, Plaintiff exhibited lumbar tenderness but had an intact gait, normal reflexes, and no sensory loss or motor weakness. R. 1426. A July 2009 electromyography study showed only mild right L5 radiculopathy. R. 422. Other examinations showed normal strength, no joint deformity, and no edema. R. 424-25, 697. Treatment remained relatively conservative and consisted primarily of medication, injections, and physical therapy. R. 430, 441, 525, 692, 704. Contemporaneous treatment notes stated that medication reduced Plaintiff's pain and allowed her to function without side effects. R. 692.

Some caution is required when considering benign objective findings in connection with fibromyalgia because the condition may not produce the kinds of conventional abnormalities associated with other musculoskeletal impairments. See Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2003). But the ALJ did not reject Plaintiff's fibromyalgia diagnosis or rely exclusively on normal strength and imaging. He found her fibromyalgia severe, acknowledged trigger points and other abnormalities, and imposed substantial exertional and postural restrictions. R. 976, 980, 982. The normal strength findings, mild radiculopathy, and imaging were also relevant to Plaintiff's degenerative disc disease and other musculoskeletal impairments, and the ALJ considered those findings together with Plaintiff's treatment history,

reported improvement with medication, daily activities, and the absence of a contemporaneous opinion imposing greater restrictions. R. 981-84.

Substantial evidence also supports the ALJ's consideration of Plaintiff's migraines and asthma. Although Plaintiff testified in 2024 that she experienced weekly headaches lasting several days, treatment records from the insured period indicated that injections were successful and that she rarely needed Imitrex more than once or twice per month. R. 594. Likewise, the records reflected that Plaintiff's asthma was generally controlled with medication, that she sometimes reported no regular inhaler use, and that repeated examinations showed clear lungs. R. 591, 595, 600. The RFC nevertheless restricted Plaintiff's exposure to respiratory irritants, humidity, extreme temperatures, and excessive noise. R. 980.

An ALJ is not required to accept a claimant's subjective allegations without question and may weigh them against the contemporaneous medical evidence and other evidence in the record. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Here, the ALJ accepted that Plaintiff's impairments could cause pain and other symptoms but reasonably concluded that her 2024 description of their intensity was not fully consistent with the records from 2008 through 2013. R. 981–83. The resulting RFC reflects significant limitations and is supported by substantial evidence.

**2. The Medical Opinion Evidence**

The ALJ also reasonably evaluated the medical opinions. Dr. Rita Figueroa examined Plaintiff in March 2018, approximately five years after her insured status expired. R. 939-52, 983. Dr. Figueroa assessed moderate difficulty with repetitive bending, lifting, and carrying and with prolonged walking, standing, and squatting. R. 943. She further opined that Plaintiff could lift ten pounds occasionally and sit, stand, or walk for three hours each during a workday. R. 945.

Evidence created after the date last insured is not categorically irrelevant if it sheds light on a claimant's condition during the insured period. Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41-42 (2d Cir. 1972). But Dr. Figueroa did not offer retrospective opinions or state that her 2018 findings described Plaintiff's functioning before March 31, 2013. The ALJ also found that her most restrictive limitations were based substantially on symptoms Plaintiff reported years after the relevant period and were inconsistent with the more contemporaneous treatment record. R. 983-84. Those were legitimate reasons to give the opinion little weight. Notably, the ALJ nevertheless incorporated several restrictions consistent with Dr. Figueroa's assessment, including sedentary exertion, a ten-pound lifting restriction, postural limitations, a position-change option, and environmental restrictions. R. 980.

The ALJ similarly gave minimal weight to Dr. Jonathan Nasser's June 2019 statement that Plaintiff was "unable to do any physical work." R. 984, 1515. That statement was made more than six years after the insured period, did not address Plaintiff's functioning before March 2013, and expressed a conclusion on disability reserved to the Commissioner. Dr. Nasser's later state-agency form did not assess any physical limitations and identified only a moderate limitation in maintaining a consistent pace, with no limitation in the other mental functions addressed. R. 984, 1689-90.

Thus, this is not a case in which the ALJ rejected contemporaneous medical opinions supporting work-preclusive limitations and replaced them with his own medical conclusions. No medical source assessed work-preclusive limitations during the insured period, and neither of the later opinions purported to describe Plaintiff's functioning during that period. The ALJ instead formulated the RFC from the longitudinal treatment record and included limitations substantially more restrictive than many of the contemporaneous findings might independently suggest.

**3. Plaintiff's Mental RFC**

The ALJ's treatment of Plaintiff's bipolar disorder and ADHD also withstands review. At step three, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. R. 979. He accounted for those impairments in the RFC by limiting Plaintiff to simple, routine, low-stress work involving no more than occasional judgment, decision-making, or changes in the work setting. R. 980.

The ALJ supported those restrictions with evidence from the insured period. Although Plaintiff periodically reported irritability, racing thoughts, insomnia, and difficulty focusing, mental-status examinations generally showed that she was oriented, maintained good eye contact, had clear thought content, and displayed normal judgment and insight. R. 352, 436, 555. Plaintiff reported that Adderall resolved her symptoms in 2008 and that medications improved her symptoms after she resumed treatment in 2012. R. 362–66, 1420. She also stated that she finished tasks, could manage money, was reading books "non-stop," and, in June 2012, that her focus was "great." R. 358, 979. She reported that she was looking for work closer to home during the same period. R. 358.

An RFC determination is an administrative finding reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Accordingly, an ALJ's RFC determination need not perfectly match any single medical opinion, provided it is supported by substantial evidence. Schillo, 31 F.4th at 78. Nor does the absence of a contemporaneous functional assessment automatically require remand when the record contains sufficient treatment notes, diagnostic results, and other evidence from which the ALJ can assess the claimant's limitations. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013).

Here, the record contains years of treatment notes addressing Plaintiff's physical and mental conditions before and during the insured period. Plaintiff does not identify an omitted treatment record, an unresolved medical question, or a contemporaneous source whom the ALJ should have contacted. The record was therefore sufficient for the ALJ to make an RFC determination.

**C. The Commissioner Satisfied His Burden at Step Five**

Plaintiff also challenges the vocational expert's testimony and the ALJ's determination that jobs existed in significant numbers in the national economy. See ECF No. 12 at 18-20. She argues that the identified occupations are obsolete, that the job estimates were unreliable, and that the expert testified that a person limited to one-handed work could not perform them. These arguments do not undermine the ALJ's step-five finding.

At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. See 20 C.F.R. §§ 404.1520(a)(4)(v). An ALJ may rely on a vocational expert's testimony to determine whether work exists for a person with the claimant's age, education, experience, and RFC. See McIntyre, 758 F.3d at 151-52. Such testimony may constitute substantial evidence, and the threshold for evidentiary sufficiency is "not high." Biestek v. Berryhill, 587 U.S. 97, 103, 105 (2019). Whether the testimony clears the threshold depends on the testimony and the administrative record as a whole. Id. at 106-07. Moreover, because Social Security hearings are informal, the "strict rules of evidence, applicable in the courtroom, are not to" apply. Id. at 104 Plaintiff's reliance on Daubert is therefore misplaced.

The vocational expert testified that a person with Plaintiff's RFC could work as a final assembler, with approximately 29,000 jobs nationally; a touch-up screener, with approximately

10,000 jobs nationally; or an addressing clerk, with approximately 23,000 jobs nationally. R. 985, 1019–20. She also explained that the Dictionary of Occupational Titles does not address a position-change option and that her testimony on that issue was based on her professional knowledge and experience. R. 1019. The ALJ identified and accepted that explanation. R. 985–86.

Plaintiff's argument that the job estimates are more than 50 years old conflates the occupational descriptions in the Dictionary of Occupational Titles with the expert's estimates of the current number of jobs. As the Court of Appeals has explained, the DOT "defines jobs" and describes their skill and exertional requirements, but "does not report how many such jobs are available in the economy." Brault, 683 F.3d at 446. A vocational expert therefore may use the DOT to identify occupational requirements while consulting other employment data and applying vocational expertise to estimate the number of jobs available. See id. 446-447, 450-451.

The expert acknowledged that the addressing clerk occupation had changed and no longer involved handwriting addresses or using a typewriter. R. 1020. But even if the addressing clerk occupation were excluded, the expert identified 39,000 final assembler and touch-up screener jobs nationally. R. 1019. That number independently supports the finding that work existed in significant numbers. See Mandato v. Comm'r of Soc. Sec., No. 22-cv-04000 (ALC), 2023 WL 6237683, at *13 n.6 (S.D.N.Y. Sept. 26, 2023).

Finally, the expert's response to the one-handed hypothetical did not require a disability finding. The ALJ considered Plaintiff's carpal tunnel syndrome but found that it did not result in significant functional limitations during the insured period. R. 976. The 2013 nerve-conduction study showed only mild prolongation of the left ulnar sensory nerve, and no contemporaneous medical source restricted Plaintiff to using one hand. R. 422. Although Plaintiff testified in 2024

that she previously dropped objects and had difficulty knitting and holding her infant daughter, R. 1014, the ALJ was not required to equate those complaints with a complete inability to use one hand in the workplace. Because the adopted RFC did not contain a one-handed limitation, the expert's response to a hypothetical containing that additional restriction does not undermine her testimony concerning the RFC the ALJ actually found.

**D. Plaintiff's Procedural Objections Do Not Warrant Remand**

Plaintiff argues that the speed with which the three ALJ decisions were issued, the use of agency attorneys to prepare draft decisions, and the Appeals Council's June 2023 remand order demonstrate that her claim did not receive impartial consideration. See ECF No. 12 at 9–13. These allegations are speculative and do not establish either legal error or prejudice. Moreover, the decision discussed the evidence in detail, imposed additional mental restrictions absent from the prior RFC, and addressed the issues identified by the Appeals Council. R. 973–86. Plaintiff identifies no substantive error caused by the nine-day interval.

The Appeals Council's June 2023 remand order likewise did not prejudice Plaintiff. The Council identified an inconsistency favorable to her: the 2021 decision found moderate mental limitations but neither included corresponding restrictions in the RFC nor explained their omission. R. 1097–98. It directed a different ALJ to reevaluate Plaintiff's mental impairments, reconsider the RFC, and obtain supplemental vocational testimony if warranted. R. 1098–99. Those instructions did not direct the ALJ to deny benefits or restrict him from considering Plaintiff's physical impairments. To the contrary, the order required further consideration of limitations that the prior decision had not adequately addressed.

The Appeals Council did not direct the ALJ to consolidate Plaintiff's May 2023 SSI application with her DIB claim; it directed him to determine whether consolidation was

appropriate. R. 1099. Although the March 2024 decision does not document that determination, Plaintiff does not explain how the omission affected the adjudication of her DIB claim. The two applications concerned non-overlapping periods: the DIB claim required Plaintiff to establish disability on or before March 31, 2013, whereas SSI benefits based on the May 2023 application could not have been paid for any preceding period. See 20 C.F.R. § 416.335. Thus, even if the claims had been consolidated, a finding concerning Plaintiff's disability in 2023 would not necessarily establish that she was disabled ten years earlier. Any failure to document the consolidation determination therefore does not warrant remand of the DIB decision. Thus, this conclusion does not address the status or merits of Plaintiff's separate SSI application, which is not before the Court.

In sum, the ALJ applied the proper legal standards, considered Plaintiff's impairments individually and in combination, and supported the RFC and step-five findings with substantial evidence. Under the substantial evidence standard of review, a "reasonable factfinder" could have reached the same conclusion as the ALJ. Schillo, 31 F.4th at 69.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is DENIED. The Commissioner's cross-motion is GRANTED, and the Commissioner's decision is AFFIRMED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: August 25, 2026
New York, New York